UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| DARIUS KHALEGHI,<br><br>    Plaintiff,<br><br>  v.<br><br>THE STATE OF WASHINGTON; DEPARTMENT OF SOCIAL AND HEALTH SERVICES ("DSHS"), and its employees TROY HUTSON, LEO RIBAS, DAVID STILLMAN and ADOLPHO CAPISTANI,<br><br>    Defendants. | CASE NO. C10-5360BHS<br><br>ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGEMENT |

This matter comes before the Court on Plaintiff's ("Khaleghi") motion for partial summary judgment (Dkt. 37). The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the file and hereby denies Plaintiff's motion for the reasons discussed herein.

**I. PROCEDURAL HISTORY**

On March 9, 2011, Khaleghi filed the instant motion for partial summary judgment on the issue of liability as against Defendants DSHS and Troy Hutson ("Hutson"). Dkt. 37. On April 4, 2011, Defendants filed a joint response in opposition to Khaleghi's motion for partial summary judgment. Dkt. 41. Khaleghi did not reply.

ORDER - 1

## II. FACTUAL BACKGROUND

This is an employment discrimination action (retaliatory discharge) filed under Title VII, 42 U.S.C. § 2000e, et seq., and RCW 49.60, et seq. Complaint (Dkt. 1) ¶¶ 3.1, 3.2.

Plaintiff sets out the following factual background within his brief, which is supported by the Complaint and the declaration of Khaleghi (Dkts. 1, 39):

> Plaintiff Dariush Khaleghi formerly worked as the Interim Director of the Washington State Human Rights Commission and the Deputy Director of the Washington State Human Rights Commission. He was an executive member of the Governor's Committee on Affirmative Action. He was a member of the Thurston County Commission for Human Rights and Diversity. In 2007, he won the Governor's Award for Leadership in Management Award.
> Plaintiff is an accomplished executive with a track record of consistent success before joining the administration of Troy Hutson, Assistant Secretary of the Washington State Department of Social and Health Service (DSHS) who was in charge of the Economic Services Administration and being fired by Mr. Hutson four months later.
> Plaintiff asserts that he was unlawfully terminated for opposing efforts to whitewash allegations of discrimination involving Leo Ribas, the Director of the Community Services Division of the Economic Services Administration (ESA) of the Department of Social and Health Services (DSHS).
> Plaintiff began work on July 16, 2008 as the Director of Operations Support Division (OSD) in the ESA. He was fired on November 20, 2008. The Defendants announced to staff that Plaintiff had voluntarily decided to leave ESA. Defendants assert that Plaintiff was given two weeks notice he was being fired on November 18, 2008. However, that date difference is not a significant factual dispute in the context of this motion.
> Two months prior to being terminated, Plaintiff objected to Defendant Leo Ribas handling a potential discrimination complaint against him on his own, rather than through Human Resources at ESA which was under Plaintiff's area of responsibility. Plaintiff was told by Mr. Hutson there was no concern because the employee had not used the words "sexual harassment" or discrimination. Plaintiff provided Defendant, Troy Hutson information regarding this employee's concerns and that the need to investigate was triggered by the context of employee's complaints even where the employee did not use terminology of sexual harassment or discrimination. There was a concern Mr. Ribas may be engaging in quid pro quo sexual harassment which was creating disparate treatment and a hostile work environment for employees who were not personally involved with Mr. Ribas.
> Plaintiff also refused to allow a transfer of Mr. Ribas' Administrative Assistant to an Information Technologist 3 position in Plaintiff's area due to concerns the employee was being set up to fail and the need to address the

ORDER - 2

employee's underlying concerns and not simply transfer her away from Mr. Ribas. This occurred within two months of Plaintiff's termination.

Plaintiff refused to allow a transfer of Mr. Gutierrez where concerns of discrimination had not fully been addressed. Plaintiff was removed from reviewing the issues of Mr. Gutierrez's discrimination allegations.

Plaintiff objected to Mr. Hutson's objectification of women.

The Defendants were requested to set forth the reason for Plaintiff's termination. Their response was limited to "The plaintiff was terminated because plaintiff did not meet expectations for the position." Defendants full response is set forth below:

**INTERROGATORY NO. 1**: Identify who made the decision to terminate Plaintiff's employment, who provided input into that decision and summarize the nature of the input provided by each person, set forth in detail the reason for Plaintiff's termination and identify each person whom you believe has knowledge regarding the reasons for Plaintiff's termination and summarize the information you believe such person to have.

**RESPONSE: Plaintiff was hired as an exempt employee. He had no contractual employment rights and served at the pleasure of the appointing authority, Troy Hutson. Mr. Hutson made the decision to terminate plaintiff. He discussed his decision with Margaret Maddox, Human Resources Chief and Roxie Schalliol, Special Assistant, to ensure the appropriate notifications were prepared. The plaintiff was terminated because plaintiff did not meet expectations for the position.**

Right up until Plaintiff's termination, Defendant Troy Hutson told Plaintiff that he did not have any issues with Plaintiff's job performance. Within hours of being informed that Plaintiff had filed an EEOC complaint against Mr. Hutson, Mr. Hutson came to Plaintiff, told him he was fired and had Plaintiff escorted off the ESA property.

Dkt. 37 at 2-4 (Emphasis in original).

In opposition, Defendants set out the following facts, which are supported by the declarations of Hutson, Diana Harder ("Harder"), and Kandy Pierson ("Pierson"):

Plaintiff, Dariush Khaleghi, was an employee of ESA for four months in 2008. On June 26, 2008, Mr. Khaleghi was informed that he had been selected as the new Director of the Operation Support Division, a division of ESA, effective July 16, 2008. The Director position is an exempt position, and Mr. Khaleghi reported to and served at the pleasure of DSHS Assistant Secretary Troy Hutson.

Mr. Khaleghi's exempt employment was terminated four months later, on November 18, 2008. This termination came as a result of Mr. Hutson's feeling that Mr. Khaleghi had not met his expectations for the position and was thus no longer a good fit for the Director position. Mr. Hutson informed Mr. Khaleghi that he would be relieved of his position and would have two weeks or more, if he required it, to transition out of ESA and back to DVA.

Mr. Khaleghi announced the next morning that he was not going to leave. He indicated that he thought he had been treated in a discriminatory fashion, and he asserted that he had filed an EEOC claim to pursue this

ORDER - 3

theory. Following this series of announcements by Mr. Khaleghi, Mr. Hutson consulted with DSHS Human Resources and determined that the safest course for all parties would be to have Mr. Khaleghi spend his transitional two weeks at home on paid leave.

Mr. Khaleghi did not return to ESA after November 19, 2008. Due to his WMS status prior to his exempt appointment with DSHS, he was reverted back to his position at the Department of Veteran's Affairs.7 With his previous position at DVA filled and no suitable substitutes, Mr. Khaleghi was laid off effective December 3, 2008. Despite his previous assertions of filing an EEOC complaint, he did not do so until December 8, 2008. This lawsuit was filed June 1, 2010.

Mr. Khaleghi claims that he was subject to retaliation based upon opposing discrimination of a co-worker and for filing an EEOC complaint. The plaintiff's motion for summary judgment as to liability for retaliation arises out of the perceived reactions of ESA and Mr. Hutson to a complaint made in September, 2008, that indirectly involved one of Mr. Khaleghi's peers, Director of CSD Leo Ribas.

Mr. Khaleghi was assigned a Confidential Secretary upon his being hired, Diana Harder. By September of 2008, Ms. Harder was concerned about her position under Mr. Khaleghi, as she felt she was not being utilized at the level of a Confidential Secretary, and felt her job could be in jeopardy. Ms. Harder approached CSD Director Leo Ribas, a longtime colleague and friend, who was in need of a Confidential Secretary. Mr. Hutson approved the move.

Shortly after the reassignment of Ms. Harder, Mr. Khaleghi was approached by Dianne Scott, an Administrative Assistant with CSD. Ms. Scott was upset at the assignment of Ms. Harder to CSD, as Ms. Harder had been her supervisor previously, and they had not gotten Ms. Scott believed that Ms. Harder's close relationship with Mr. Ribas would be a detriment to Ms. Scott's employment. She stated that Ms. Harder and Mr. Ribas had joked in her presence regarding Ms. Harder's coming to CSD and that she would make up a room at her house for Mr. Ribas to stay in if he was working late.

Mr. Khaleghi reported these concerns to Mr. Hutson on behalf of Ms. Scott. Based upon this report, Mr. Hutson assigned the matter for investigation. Mr. Khaleghi claims that Mr. Ribas was assigned the investigation. Mr. Khaleghi is mistaken. The investigation was assigned to Roxie Schalliol, Special Assistant to Mr. Hutson, and Kandy Pierson, OSD's Human Resources Manager. Neither Ms. Schalliol nor Ms. Pierson reported to Mr. Ribas.

The investigation led to no indication of any inappropriate behavior or relationships. Ms. Scott was asked if she wanted to initiate a formal investigation, but declined to further pursue the matter. Mr. Khaleghi was unaware of the investigation, despite the role played in that investigation by the OSD HR Director, Kandy Pierson. Mr. Khaleghi acknowledges that he has no evidence to suggest that, presuming an investigation occurred, there was anything improper regarding that investigation.

Mr. Khaleghi contends that his raising these concerns on behalf of Ms. Scott in September, 2008, led to his termination by Mr. Hutson in November, 2008. Since an investigation did occur, and was done by OSD, the plaintiff can offer no evidence to support that his raising issues on

ORDER - 4

behalf of Ms. Scott resulted in his termination, beyond arguing that the events occurred within a few months of each other.

In actuality, the concerns that led Mr. Hutson to replace Mr. Khaleghi are unconnected to Khaleghi's bringing Ms. Scott's concerns to Mr. Hutson. During the course of Mr. Khaleghi's employment, Mr. Hutson began to feel that Mr. Khaleghi was struggling with tasks that he should have no difficulty with given Mr. Khaleghi's stated experience. Mr. Hutson observed a lack of preparation at meetings, and a failure to complete tasks. Given the profound challenges facing executives at that level of ESA, Mr. Hutson began to have doubts regarding Mr. Khaleghi's ability to continue to work in a position of such great responsibility.

In early November, ESA had serious discussions regarding reorganization of the administration. Mr. Khaleghi suggested in the course of meetings on this subject that OSD be reorganized and potentially eliminated. To Mr. Hutson, this was unacceptable and unrealistic. Mr. Hutson indicated to the other directors that any proposals would not be shared. In a mid-November meeting, however, Mr. Khaleghi informed his own OSD management team of the potential elimination of OSD. While Mr. Khaleghi saw nothing wrong with this disclosure, when Mr. Hutson heard about this disclosure, he felt it was an act of insubordination. The disclosure itself was seen as problematic, but Mr. Hutson was further informed that the impression at the meeting was that Mr. Hutson, not Mr. Khaleghi, was the proponent of OSD's elimination.

Mr. Hutson confronted Mr. Khaleghi and expressed his concerns with his remaining on as OSD Director. Following a weekend contemplating Mr. Khaleghi's fate, on November 17, 2008, Mr. Hutson attended an OSD management team meeting and informed that team, in Mr. Khaleghi's presence, that he would be making a decision regarding Mr. Khaleghi's future with ESA. The next day, November 18, Mr. Hutson met with Mr. Khaleghi. Mr. Hutson states that he informed Mr. Khaleghi that he would be replaced as OSD Director. Mr. Khaleghi states that he was only told that he would be getting "something" later that day regarding his future with ESA. There is no dispute, however, that later that day, Mr. Khaleghi received for his approval a draft announcement stating that his tenure with ESA would end after two weeks.

On November 19, 2008, Mr. Khaleghi sent two early morning emails to several individuals at ESA. These emails, sent to Mr. Hutson as well as other HR employees in ESA, stated that Mr. Khaleghi planned to remain as the director, and indicated that he had filed an EEOC complaint. Following two meetings with Mr. Khaleghi on that day, Mr. Hutson determined that Mr. Khaleghi's position necessitated Mr. Khaleghi spending his last two weeks at home on paid leave. Mr. Khaleghi was escorted out of the building, and written notice of his termination was issued.

Mr. Khaleghi was reverted from the DSHS exempt position to his previous position with the Department of Veterans Affairs. That position was no longer available, and following the use of his vacation time and sick leave, Mr. Khaleghi was laid off from DVA, effective December 3, 2008. On December 8, 2008, Mr. Khaleghi filed his EEOC complaint.

Dkt. 41 at 2-8 (Footnotes omitted).

### III. DISCUSSION

**A.    Summary Judgment Standard**

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt"). *See also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The Court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630. The Court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson,* 477 U.S. at 255). Conclusory,

nonspecific statements in affidavits are not sufficient, and missing facts will not be presumed. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

Additionally, in employment discrimination cases, summary judgment should be granted sparingly because the issues in such cases typically are questions of fact. *See, e.g., Yartzoff v. Thomas*, 809 F.2d 1371, 1377 (9th Cir. 1987).

**B.     Burden Shifting In Retaliatory Discharge Cases**

To establish a retaliation claim under Title VII, "a plaintiff must show (1) involvement in a protected activity, (2) an adverse employment action and (3) a causal link between the two." *Brooks v. City of San Mateo*, 229 F.3d 917, 928 (9th Cir. 2000) (citing *Payne v. Norwest Corp.*, 113 F.3d 1079 (9th Cir. 1997)). At that point, "the burden of production shifts to the employer to present legitimate reasons for the adverse employment action. Once the employer carries this burden, plaintiff must demonstrate a genuine issue of material fact as to whether the reason advanced by the employer was a pretext. Only then does the case proceed beyond the summary judgment stage." *Id.*

"The causal link between a protected activity and the alleged retaliatory action can be inferred from timing alone when there is a close proximity between the two." *Thomas v. City of Beaverton*, 379 F.3d 802, 812 (9th Cir. 2004); *See, e.g., Yartzoff*, 809 F.2d at 1376 (holding that sufficient evidence of causation existed where adverse employment action occurred less than three months after the protected activity); *Miller v. Fairchild Indus., Inc.*, 797 F.2d 727, 731-32 (9th Cir. 1986) (concluding that there was adequate evidence of a causal link where the retaliatory action occurred less than two months after the protected activity).

Therefore, to succeed in obtaining summary judgment on the issue of liability, Khaleghi must first successfully navigate this burden shifting process. *See, e.g., Yartzof*, 809 F.2d at 1373.

### C. Khaleghi's Motion for Partial Summary Judgment

Khaleghi's entire motion is premised on Defendants' inability to satisfactorily articulate a legitimate, nonretaliatory reason for his discharge from employment with ESA. *See generally* Complaint; *see also* Dkt. 37 at 15-19. However, Khaleghi's premise is flatly contradicted by Defendants' response in opposition, which sets out a number of facts that, if believed, collectively reveal a legitimate, nonretaliatory reason for Khaleghi's discharge. *See generally* Dkt. 41 (relying on declarations of Hutson, Harder, and Pierson). The Court must, on summary judgment, assume the truth of the facts as set out by Defendants (the nonmoving parties).

Here, even if the Court assumes without deciding that Khaleghi has presented a prima facie case of retaliatory discharge, the Court also assumes for purposes of summary judgment that Defendants have offered a legitimate reason for Khaleghi's discharge. Continuing the foregoing assumptions, without deciding the matter, the burden of proof shifts back to Khaleghi to establish that the reasoning given by Defendants for his discharge was merely a pretext to mask his retaliatory discharge in violation of Title VII and RCW 49.60.

However, because Khaleghi did not reply to Defendants' response in opposition, it is unclear whether and on what basis Khaleghi could establish the existence of such a pretext. Nonetheless, with the current record before the Court, Khaleghi cannot succeed in his motion for partial summary judgment because material questions of fact exist with respect to his alleged claims against Hutson and DSHS.

**IV. ORDER**

Therefore, it is hereby **ORDERED** that Khaleghi's motion for partial summary judgment (Dkt. 37) is **DENIED** as discussed herein.

DATED this 28th day of April, 2011.

*[signature]*

BENJAMIN H. SETTLE
United States District Judge