UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

DARIUS KHALEGHI,

    Plaintiff,

v.

THE STATE OF WASHINGTON; DEPARTMENT OF SOCIAL AND HEALTH SERVICES ("DSHS"), and its employees TROY HUTSON, LEO RIBAS, DAVID STILLMAN and ADOLPHO CAPISTANTI,

    Defendants.

CASE NO. C10-5360BHS

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGEMENT

This matter comes before the Court on Defendants' motion for summary judgment (Dkt. 47). The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the file and hereby grants in part and denies in part Defendants' motion for the reasons discussed herein.

**I. PROCEDURAL HISTORY**

On April 28, 2011, the Court denied Plaintiff's ("Khaleghi's") motion for partial summary judgment on the issue of liability against Defendants DSHS and Troy Hutson ("Hutson"). Dkt. 46. On June 2, 2011, Defendants filed the instant motion for summary judgment as to all claims. Dkt. 47. On June 20, 2011, Khaleghi responded in opposition to the Defendants' motion. Dkt. 55. On June 24, 2011, Defendants replied. Dkt. 57.

## II. FACTUAL BACKGROUND

This is an employment discrimination and retaliation action filed under Title VII, 42 U.S.C. § 2000e, et seq. ("Title VII"), and RCW 49.60, et seq ("WLAD")[1]. Complaint (Dkt. 1) ¶¶ 3.1, 3.2. The matter arises out of Khaleghi's allegations against his former supervisor, Troy Hutson ("Hutson"), and employer, the Department of Social and Health Services ("DSHS"). *See* Dkt. 1 (Complaint).[2]

Khaleghi is an Iranian-American who immigrated to the United States in 1986. Complaint ¶ 2.1. Immediately prior to working for DSHS, Khaleghi worked for the Washington State Department of Veterans Affairs ("DVA"). *Id*. On July 16, 2008, Khaleghi became the new Director of the Operation Support Division ("OSD"), a division of the Economic Services Division ("ESA"). Complaint ¶ 2.2. The OSD at ESA "is responsible for the planning, budgeting, purchasing, contracting, performance management, quality, and all operational aspects of the [ESA] in support of Division of Child Support ("DCS") and Community Services Division ("CSD")." *Id*. ESA has three directors, each of which report to and serve at the pleasure of the Assistant Secretary, Hutson. *See, e.g., id*.

### A. Discrimination Claim, National Origin

Khaleghi alleges that Defendants are liable for an adverse employment act related to the acts of Adolpho Capistanti ("Capistanti"). At all relevant times, DVA employed Capistanti; Capistanti and Khaleghi were both at DVA in 2007 and until Khaleghi left for ESA in 2008. Khaleghi alleges that Capistanti engaged in discriminatory conduct directed at him due to his Iranian heritage. Khaleghi alleges such conduct took place for a finite period in 2007 and then again during his hiring process with DSHS in 2008.

---

[1]WLAD is an acronym for Washington Law Against Discrimination.

[2]During the course of this case, Khaleghi voluntarily dismissed former Defendants David Stillman, Leo Ribas, and Adolpho Capistani. Dkts. 35, 51, 52.

ORDER - 2

It is undisputed that, in 2007, Capistanti made a series of prank calls to Khaleghi. Khaleghi does not allege that Capistanti made any racial remarks or otherwise invoked his Iranian heritage during any of the prank calls. *See, e.g.,* Declaration of Matthew T. Kuehn (Kuehn Decl.), Dkt. 48, Ex 1 (Deposition of Khaleghi (Khaleghi Dep.) at 64-66). Capistanti denies that his prank calls were racially motivated. *See* Declaration of Adolpho Capistanti (Capistanti Decl., Dkt. 49) ¶¶ 12-14. It is undisputed that Khaleghi does not know if Capistanti knew at the time of the prank calls that Khaleghi was Iranian. It is also undisputed that the prank call matter was resolved and Capistanti was reprimanded for his actions. In the absence of Capistanti offering an alternative motivation for the calls or in the absence of any other self-perceived reason for the prank calls, Khaleghi alleges that the only basis for the calls must be his Iranian background. *See, e.g.,* Khaleghi Dep.

Although Khaleghi does not allege any other inappropriate contact between himself and Capistanti, he does allege that Capistanti interfered with and delayed his start date at ESA. Complaint ¶ 2.8. Khaleghi announced to DVA that he would be leaving to work for ESA, effective June 30, 2008. Hutson Decl. ¶ 19, Ex. 2 (letter from Khaleghi to DVA). While Hutson did offer the OSD position to Khaleghi, Hutson did not plan for Khaleghi to start until July 17, 2008. *See id.*, Ex. 3 (email describing Khaleghi's start date for ESA). Khaleghi blames Capistanti and seeks to hold Defendants liable for what he claims to have been a delay in his start date.

Hutson, prior to Khaleghi's formal offer, learned that Capistanti had "made a comment to a co-worker that he hoped that [Hutson] carefully checked Mr. Khaleghi's references." *Id.* ¶ 22. Someone other than Capistanti informed Hutson of this comment, and Hutson decided to follow up with Capistanti. *Id.* Hutson asserts that Capistanti did not affect his decision to hire Khaleghi and that he also orally reprimanded Capistanti for the prank phone calls from a year earlier. *Id.* ¶¶ 23-29. Khaleghi began working at ESA

on July 16, 2011, and never had a break in service between there and DVA. *Id.*; *see also id.,* Ex. 4.

In addition to these claims, Khaleghi also asserts a discrimination claim based on allegations that Hutson made sexually demeaning comments about women and sexual matters to him. Although, Hutson admitted in his deposition that he commented on the attractiveness of a female (not a co-worker), he does not recall the extent of his comments. Khaleghi claims that such comments are not appreciated by him and are considered inappropriate within his culture; however, he does not allege any other basis on which to believe or claim that Hutson made his comments, whatever they were, in relation to Khaleghi being Iranian. Nor does Khaleghi allege any other instance in which Hutson made such a comment after Khaleghi informed Hutson that he did not appreciate the comment.

**B.     Retaliation Claim, Discharge from DSHS**

Khaleghi alleges Defendants discharged him to retaliate for his opposing what he believed to be a matter of potential workplace sexual discrimination effected upon a coworker. Complaint ¶ 2.4. Defendants oppose this claim on the basis that the individual for which Khaleghi intervened never claimed, and did not believe that she was the victim of sexual discrimination, and Defendants' investigation in the matter resulted in no finding of discrimination.

When Khaleghi began the OSD director, Diana Harder was assigned to and served as Khaleghi's confidential secretary. Declaration of Diana Harder (Harder Decl.) ¶ 4. Harder believed, based on statements by Khaleghi, that he did not wish to have a secretary. *See id.* ¶ 6. Based on this belief, Harder requested a transfer and was reassigned to a different director, Leo Ribas ("Ribas"). *Id.* ¶ 8. It is undisputed that she and Ribas are longtime friends and colleagues. *See, e.g., id*. Hutson approved Harder's transfer. *Id.* ¶ 9; Hutson Decl., ¶¶ 33-34.

ORDER - 4

Dianne Scott had a problem with Harder's transfer. Scott was an administrative assistant with CSD and was formerly supervised by Harder. It is undisputed that Scott and Harder did not get along well during the time Harder supervised Scott. *See, e.g.,* Declaration of Matthew Kuhen (Kuhen Decl.); Khaleghi Dep. At 118-120. It is undisputed that Scott believed that Harder had a bed made up for Ribas at her house for when he worked late. Khaleghi Dep. at 120-121.

Scott believed that the relationship between Harder and Ribas would negatively affect her employment at ESA. She made this concern known to Khaleghi. *Id.* at 121-122. Although Scott never said as much, Khaleghi believed that Scott may have been complaining about a *quid pro quo* sexual discrimination scenario in which Ribas was obtaining a sexually based exchange for Harder's success at ESA and that Scott would not have such benefits because she was not a part of any *quid pro quo* situation with Ribas. *See, e.g.,* Complaint 2.4; Khaleghi Dep. at 122. In fact, it is undisputed that Scott herself did not believe that Ribas and Harder were engaged in any sexually inappropriate work relationship.

On behalf of Scott, Khaleghi voiced the matter to Hutson and urged Hutson to formally investigate the matter. *See, e.g.,* Khaleghi Dep. at 121-122. Khaleghi claims that Hutson told him to take the matter up with Ribas directly and did not believe that a formal investigation was necessary. Khaleghi supplied Hutson with materials from the Equal Employment Opportunity Commission ("EEOC") regarding when formal investigations should be made with respect to claims, even when the claimant does not use the words "sexual harassment." *Id.* at 124.

However, Hutson did initiate a formal investigation that was not conducted by Ribas and resulted in a finding that no discrimination had occurred. Khaleghi claims to have been unaware of this investigation at the time he was employed with OSD. Khaleghi Dep. at 123. Khaleghi, having now become aware of the investigation and its results

ORDER - 5

through this litigation, does not allege any improprieties with the investigation. *See id.* at 131 (stating that, other than his suspicions, he finds nothing inadequate about the investigation).

Instead, Khaleghi claims that, as a result of his bringing Scott's complaint to Hutson and having to talk with Ribas, he was shut out of the directors' circle for emails, meetings, and the like. In opposition, Defendants point out that, immediately after Khaleghi mentioned his belief that he was being retaliated against for making Scott's claim known, that he was invited and had only been inadvertently excluded prior to that time from the other directors' meetings. *See, e.g.,* Hutson Decl. ¶ 41.

Additionally, in opposition to Khaleghi's over-arching retaliatory discharge claim, Hutson asserts that he was displeased with Khaleghi's performance as OSD. Specifically, Hutson claims that Khaleghi was insufficiently prepared for meetings, failed to complete tasks, and acted insubordinately when Khaleghi discussed a potential reorganization plan with his team that Hutson believed to be a matter discussed in confidence with the director team. *See, e.g.*, *id.* ¶¶ 44-45.

As a result of Hutson's concerns, Defendants claim, he informed the OSD management team that he was considering Khaleghi's future with ESA. *Id.* ¶ 49; *see also* Khaleghi Dep. at 145-146 (stating that Hutson mentioned that Khaleghi was not a "good fit" for the OSD director position). Hutson made his concerns about Khaleghi not being a good fit known to Khaleghi on November 17, 2008. *Id.* On November 18, 2008, Hutson met with Khaleghi and claims that he informed him that he would be asked to leave ESA. *See* Hutson Decl. ¶ 51. In contrast, Khaleghi claims he was merely informed by Hutson that he would receive "something" via email regarding his future with ESA. Khaleghi Dep. at 148-49. However, there is no dispute that Khaleghi received via email a draft announcement stating that he was leaving his position at ESA. *Id.* at 149; Hutson Decl. ¶ 52, Attachment 7 (copy of draft announcement). Hutson apparently asked Shannon

ORDER - 6

Wallace ("Wallace"), ESA's public relations manager, to send Khaleghi the draft announcement, which she did on November 18, 2008 at 6:30 p.m. Khaleghi Dep. at 149. Hutson maintains that he was attempting to provide Khaleghi with a graceful exit from ESA and envisioned that he would exercise his rights to revert to DVA.

On November 19, 2008, Khaleghi sent emails to Hutson and other Human Resources employees at ESA to inform them that he planned to remain as director and that he had filed an EEOC complaint against Hutson. In response, Hutson had Khaleghi placed on administrative leave for his final two weeks at ESA and Khaleghi was removed from the workplace. Hutson Decl. ¶ 53.

Khaleghi's attempt to revert to DVA proved unsuccessful because his previous position was already filled. Instead of reverting, DVA laid Khaleghi off from work. Khaleghi filed his formal EEOC complaint on December 8, 2008. Khaleghi Dep. at 164.

### III. DISCUSSION

Based on the foregoing factual background, Khaleghi alleges (1) that he was subject to a hostile work environment and disparate treatment on account of his protected status as an Iranian-born American and (2) that Defendants terminated him in retaliation for opposing discriminatory acts against a fellow employee. Complaint ¶¶ 3.1, 3.2 (alleging violations of Title VII and WLAD)

**A.  Summary Judgment Standard**

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). There is no genuine issue of fact for trial where the record, taken as a whole,

could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt"). *See also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The Court must consider the substantive evidentiary burden that the nonmoving party must meet at trial -, e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630. The Court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson,* 477 U.S. at 255). Conclusory, nonspecific statements in affidavits are not sufficient, and missing facts will not be presumed. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

Additionally, in employment discrimination cases, summary judgment should be granted sparingly because the issues in such cases typically are questions of fact. *See, e.g., Yartzoff v. Thomas*, 809 F.2d 1371, 1377 (9th Cir. 1987).

**B.     Disparate Treatment**

Khaleghi alleges that Defendants treated him differently than his coworkers based upon his ethnicity and national origin, Iranian-born American. Where a plaintiff, as here, offers only circumstantial evidence of disparate treatment, the Supreme Court has

established "a basic allocation of burdens and order of proof in a disparate treatment case, [under] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248 (1981), as modified by *Desert Palace v. Costa*, 539 U.S. 90 (2003)." *Davis v. NPC Pizza Hut*, 447 F. Supp.2d 1260, 1266 (N. D. Ala., 2006). "[T]he plaintiff first has the burden of establishing a prima facie case of discrimination, which creates a rebuttable presumption that the employer acted illegally." *McCalister v. Hillsborough County Sheriff*, 211 F. App'x 883, 884-85 (11th Cir. 2006).

"To set out a *prima facie* case, the plaintiff may show that: (1) he is a member of a protected class; (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4) he was replaced by a person outside his protected class or was treated less favorably than a similarly-situated individual outside his protected class." *Maynard v. Bd. of Regents of the Univs. of the Fla. Dep't of Educ.*, 342 F.3d 1281, 1289 (11th Cir. 2003); *see also Domingo v. Boeing Employees' Credit Union*, 124 Wn. App. 71, 81 (2004) (same).

Here, there is no dispute that Khaleghi meets the first element based on his national origin. Given that Defendants hired Khaleghi, he was presumably qualified for the position even though he did not exactly match the criteria for the ideal candidate as sought by Hutson for the position of OSD director. Khaleghi could also establish the fourth element because he was replaced by a person outside of his protected class. However, Khaleghi cannot establish an adverse employment action because he was hired for the position he sought. Thus, Khaleghi has not, based on the current record, established a *prima facie* case for disparate treatment. Additionally, Khaleghi has not provided competent evidence and/or adequate authority to establish that Hutson's isolated comment(s) about the attractiveness of a female is sufficient as a basis on which to support his discrimination claims in this case.

However, and possibly more important, Khaleghi did establish a *prima facie* case of discrimination on the basis of race, Defendants may shift the burden back to him by providing legitimate, nondiscriminatory reasons for the challenged employment action. *E.g., Burdine,* 450 U.S. at 257. Defendants' "burden of rebuttal is exceedingly light." *Cooper v. Southern Co.*, 390 F.3d 695, 725 (11th Cir. 2004). Once Defendants proffered a nondiscriminatory reason for Khaleghi's termination, he "then has the ultimate burden of proving the reason to be a pretext for unlawful discrimination." *Denney v. City of Albany*, 247 F.3d 1172, 1183 (11th Cir. 2001); *see also Pannell v. Food Servs. of Am.*, 61 Wn. App. 418, 432 (1991), *rev denied,* 118 Wn.2d 1008 (1992).

Here, Defendants assert that the alleged delay in Khaleghi's hire, if any, seems to have been caused by a mis communication that led to Khaleghi announcing his departure from DVA earlier than appropriate. Nonetheless, the claimed two-week perceived delay is not actionable as discrimination because there is no competent evidence proffered by Khaleghi that Defendants' reasonable explanation of the matter is merely a pretext to cover for racial discrimination resulting in the alleged disparate treatment: (1) he was hired for the position he applied for, and (2) he began that position on July 16, 2008 – the day Hutson planned for him to start, only two weeks after Khaleghi thought he was to begin following a reference check. Simply put, the two-week delay is *de minimis* even if the delay partially resulted from Hutson's desire to follow up on Capistanti's claims about Khaleghi's references needing to be checked.[3]

In considering the record and relevant authority, the Court finds that Khaleghi has failed to carry his burden to provide competent evidence to establish that the reason

---

[3]To the extent Khaleghi has alleged a discrimination claim tied solely to the prank calls made by Capistanti, he has not provided adequate authority on which Defendants could be held liable for acts of a DVA employee that occurred well before he was hired to work at ESA. Moreover, he has not shown an adverse employment action as a result of Capistanti's prank calls.

ORDER - 10

proffered for terminating his employment was merely a pretext. Further, Khaleghi has not supplied adequate case law for the proposition that the absence of a motivation other than race is cause to find a pretext.

Therefore, the Court grants summary judgment in favor of Defendants on Khaleghi's disparate treatment theory.

## C. Retaliatory Discharge

Khaleghi asserts that his termination from ESA was retaliatory based on his conduct of bringing to Hutson's attention a potential sexual harassment situation on behalf of Scott and later filing an EEOC complaint. He argues, after raising Scott's issue to Hutson he felt cutoff and ostracized from the directors' circle. He also argues that he was not terminated until after he informed Hutson that he had filed an EEOC complaint against him regarding this matter. In opposition, Defendants argue that Hutson terminated Khaleghi, or at least informed him that he would be terminated, on November 18, 2008. And yet, Khaleghi did not inform Hutson of the EEOC complaint until November 19, 2008. With this in mind, the Court turns to the analytical framework applicable to Khaleghi's claim of discrimination.

To establish a retaliation claim under Title VII[4], "a plaintiff must show (1) involvement in a protected activity, (2) an adverse employment action and (3) a causal link between the two." *Brooks v. City of San Mateo*, 229 F.3d 917, 928 (9th Cir. 2000) (citing *Payne v. Norwest Corp.*, 113 F.3d 1079 (9th Cir. 1997)). "The causal link between a protected activity and the alleged retaliatory action can be inferred from timing alone when there is a close proximity between the two." *Thomas v. City of Beaverton*, 379 F.3d 802, 812 (9th Cir. 2004); *see, e.g., Yartzoff*, 809 F.2d at 1376 (9th Cir. 1987) (holding that sufficient evidence of causation existed where adverse employment action occurred less

---

[4]The parties agree that the same analytical framework applies to Khaleghi's WLAD claim for the alleged retaliatory conduct.

ORDER - 11

than three months after the protected activity); *Miller v. Fairchild Indus., Inc.*, 797 F.2d 727, 731-32 (9th Cir. 1986) (concluding that there was adequate evidence of a causal link where the retaliatory action occurred less than two months after the protected activity).

After a plaintiff establishes a *prima facie* case for discrimination then "the burden of production shifts to the employer to present legitimate reasons for the adverse employment action. Once the employer carries this burden, a plaintiff must demonstrate a genuine issue of material fact as to whether the reason advanced by the employer was a pretext. Only then does the case proceed beyond the summary judgment stage." *Id.* As this Court has said before, Khaleghi must first successfully navigate this burden shifting process before he can succeed on his retaliatory discharge theory. Dkt. 46 (order denying Khaleghi's motion for summary judgment); *see also, e.g., Yartzof*, 809 F.2d at 1373.

There is no dispute that Khaleghi's act of reporting what he believed to be a case of sexual harassment on behalf of Scott would be considered protected activity.[5] Khaleghi could also likely establish the adverse action element by pointing to the fact that he was terminated from ESA, notwithstanding the theoretical reversion to DVA.

As to the causal link, the Court is somewhat persuaded by Khaleghi's position. In *Yartzof*, the Ninth Circuit found that a causal link based on the temporal proximity of the protected conduct and the termination. There, Yartzof had received positive feedback regarding his performance and then shortly after filing his EEOC complaint, he experienced an adverse action. The *Yartzoff* court found that such was sufficient evidence to establish the *prima facie* case of retaliation.

---

[5]The parties do dispute whether sexual harassment was actually occurring, given that a such illegal conduct was not found in the investigation that Hutson ordered, and Scott did not herself believe she was reporting sexual harassment. However, Defendants have not provided adequate authority to establish that these facts would be dispositive of Khaleghi's claim. If Khaleghi had a reasonable basis on which to raise his concerns, then his conduct would be protected. Further, his EEOC complaint is protected activity that would start the burden shifting process in the face of an adverse employment action.

Here, the parties dispute when Khaleghi was actually fired. He admits that Hutson informed him that his job was in question. He admits receiving a draft of a resignation letter, written for him by Wallace. And it was not until one day after these events that Khaleghi informed Hutson that he had filed the EEOC complaint and Hutson had Khaleghi escorted off of the property and put on administrative leave for his final two weeks at ESA. However, Khaleghi argues that he was unaware that he was being given the option of a "graceful exit" and that otherwise he would simply be fired from ESA. He also argues that the draft resignation came to him from Wallace and he did not view a letter from her as being the correct means by which a "graceful exit" or firing would occur. Further he argues that Hutson had informed him that he was doing well in the position and that he was surprised with how much Khaleghi was able to accomplish and take on in such a short time of employ.

In short, Khaleghi argues that he had no reason to believe his job was in jeopardy and that Hutson did not fire him until he was escorted off the work premises following his disclosure that he had filed an EEOC complaint against Hutson. The timing of these events is probative and sufficiently establishes the requisite causal link for purposes of resolving the instant motion. Thus, Khaleghi has established a *prima facie* case for his retaliation claim. However, Khaleghi must still navigate the burden shifting framework discussed in *Yartzoff*:

> In Title VII retaliation cases, once the plaintiff has established a prima facie case, the burden of production shifts to the defendant to articulate a legitimate, non-retaliatory explanation for its decisions. Only the burden of production shifts; the ultimate burden of persuasion remains with the plaintiff. The employer need not persuade the court that it was actually motivated by the proffered reasons: It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff.

809 F.2d at 1376 (citations and quotations omitted). Thus, like in *Yartzoff*, Defendants "need only produce admissible evidence which would allow the trier of fact rationally to

ORDER - 13

conclude that the employment decision had not been motivated by discriminatory animus." *Id.* (citing *Miller v. Fairchild Indus., Inc.*, 797 F.2d 727, 731 (9th Cir. 1986) (quoting Burdine, 450 U.S. at 257).

Here, Defendants have articulated such a non-retaliatory explanation for terminating Khaleghi's employment: he acted insubordinately, did not adequately prepare for meetings, and was ultimately not a good fit for the position of OSD director. This proffered reason, which is supported by declarations, depositions, and documentary evidence is sufficient to shift the burden of production back to Khaleghi:

> If the defendant carries the burden of satisfactorily articulating a legitimate, non-retaliatory reason at trial, the legally mandatory inference of retaliatory discrimination arising from the plaintiff's prima facie case drops away. *See Burdine*, 450 U.S. at 255 & n. 10. The burden of production shifts back to the plaintiff to show that the alleged explanation is a pretext for impermissible retaliation. This burden thus merges with the plaintiff's ultimate burden of persuading the court that he is the victim of retaliation. *See id.* at 256. The plaintiff may succeed "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Id.* Evidence already introduced to establish the prima facie case may be considered, and "[i]ndeed, there may be some cases where the plaintiff's initial evidence, combined with effective cross-examination of the defendant, will suffice to discredit the defendant's explanation." *Id.* at 255 n. 10; *accord Miller*, 797 F.2d at 732; *Williams*, 792 F.2d at 1486; *Lowe*, 775 F.2d at 1008. Accordingly, this court has observed that a grant of summary judgment, though appropriate when evidence of discriminatory intent is totally lacking, is generally unsuitable in Title VII cases in which the plaintiff has established a prima facie case because of the "'elusive factual question'" of intentional discrimination. *Miller*, 797 F.2d at 732-33 (quoting *Burdine*, 450 U.S. at 255 n. 8); *Lowe*, 775 F.2d at 1009, as amended, 784 F.2d at 1407; *see Schuler v. Chronicle Broadcasting Co.*, 793 F.2d 1010, 1011-12 (9th Cir.1986); *Steckl v. Motorola, Inc.*, 703 F.2d 392, 393 (9th Cir.1983).

809 F.2d at 1377.

Khaleghi argues that Hutson, at the time he was terminated, gave only the unadorned "you're not a good fit" as his reason for terminating Khaleghi. Khaleghi argues that all of the proffered reasons given in the current record were created from

whole cloth for the purposes of this case and, presumably, were untrue at the time of his termination.

In opposition, Defendants argue that Khaleghi's reasoning is unpersuasive considering that (1) Khaleghi only perceived to be cut off from meetings and the other directors but was included as soon as he raised the issue; (2) Hutson had a meeting with Khaleghi and his management team to discuss what was perceived to be an act of insubordination and to inform Khaleghi that his future with ESA was uncertain; and (3) that Khaleghi received a draft of his resignation email one day prior to informing Hutson of the EEOC complaint.

A question of fact exists in this case as to whether Khaleghi's termination was retaliatory given the fact that (1) it is unclear when Khaleghi was actually fired, (2) he did not understand he was fired until after informing Hutson of the EEOC complaint, and (3) his firing so closely trailed his involvement in what reasonably may have been thought to be valid a sexual discrimination claim filed on behalf of Scott.

Therefore, while it is a close question, the Court in considering the facts in the light most favorable to Khaleghi denies Defendants' motion for summary judgment on the issue of retaliation.

## IV. ORDER

Therefore, it is hereby **ORDERED** that Defendants' motion for partial summary judgment (Dkt. 47) is **DENIED in part** and **GRANTED in part** as discussed herein.

DATED this 26th day of July, 2011.

BENJAMIN H. SETTLE
United States District Judge